**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |
|---|---|
| MILLENNIUM PIPELINE CO., L.P.,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | |
| ) | |
| CARLOS M. GUTIERREZ,    ) | |
| SECRETARY OF COMMERCE, *et al.*,    ) | |
| )    **Civil Action No. 04-233 (RCL)** | |
| Defendants,    ) | |
| ) | |
| and    ) | |
| ) | |
| NEW YORK STATE DEPARTMENT    ) | |
| OF STATE, *et al.*,    ) | |
| ) | |
| Intervenor-Defendants.    ) | |

---

**MEMORANDUM OPINION**

This matter comes before the Court on the plaintiff's motion [30] for summary judgment, intervenor-defendant New York State Department's cross-motion [39] for summary judgment, intervenor-defendant Village of Croton-On-Hudson, Briarcliff Manor, and Town of Cortlandt's cross-motion [44] for summary judgment and defendant the Secretary of Commerce's cross-motion [45] for summary judgment. Upon consideration of these motions, the oppositions thereto, the reply briefs, the applicable law, and the entire record herein, the Court concludes that plaintiff's motion will be denied and all cross-motions for summary judgment will be granted.

**BACKGROUND**

Millennium, a partnership of several North American energy companies, proposes to

1

construct and operate a natural gas pipeline that would stretch approximately 420 miles (the "Project"), from a point along the United States-Canada border in Lake Erie to a terminus outside New York City. The Project will transport U.S. and Canadian natural gas to markets in the eastern United States, including New York.  Millennium states that the pipeline's capacity would be 700,000 decatherms per day.  (Pl.'s Mot. 2.)

The construction and operation of the Millennium Project must be approved by the Federal Energy Regulatory Commission ("FERC") under the Natural Gas Act, 15 U.S.C. §§ 717 *et seq* (2005)*.  (*Id.*)  On December 22, 1997, Millennium filed an application for a certificate of public convenience and necessity authorizing the construction and operation of the Millennium Project under the Natural Gas Act, 15 U.S.C. § 717f(c), and for other necessary FERC authorizations.  (Pl.'s Mot 2.)

In preparation of an Environmental Impact Statement ("EIS") for the Millennium Project under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4332 *et seq.* (1975), the FERC proceeded to conduct a review of the Project's environmental impact and issued a Draft Environmental Impact Statement ("DEIS") in April of 1999.  (Id. at 2-3.)  Intervenor-Defendant New York State Department of State ("NYSDOS" or "New York") and other interested parties submitted comments on the FERC's DEIS.  (Id.)  Ultimately, the FERC issued an order approving the construction and operation of the Millennium Project.  (Id.)

Villages of Croton-on-Hudson, Briarcliff and Cortlandt, and other intervenors thereafter requested a rehearing of the FERC's order approving the Millennium Project.  On September 19, 2002, the FERC denied those requests for rehearing. Croton-on-Hudson, Briarcliff, Cortlandt, and others subsequently sought review of the FERC's orders regarding the Millennium Project by

2

the United States Court of Appeals for the District of Columbia Circuit. On March 16, 2004, the

Court of Appeals issued an order holding those proceedings in abeyance pending the outcome of

this Court's review. (Pl.'s Mot. at 5.)

In addition to the FERC proceedings, proceedings regarding the Project were also held

before the NYSDOS under the Coastal Zone Management Act ("CZMA"), 16 U.S.C. §§ 1451, *et*

*seq.* (2004). Because Millennium's pipeline route includes a proposed segment across the

Hudson River within New York's coastal zone, that portion of the Millennium Project was

subject to review by New York under Section 307(c)(3)(A) of the CZMA. 16 U.S.C. §

1456(c)(3)(A). Under the CZMA, New York and other states with federally-approved coastal

management programs may review any project requiring a federal license or permit if the project

would affect any land or water use or natural resource of the state's coastal zone.

Section 307(c)(3)(A) of the CZMA also states that if a state fails to act within six months

after receiving an applicant's certification, the state's concurrence with the certification shall be

conclusively presumed. 16 U.S.C. § 1456(c)(3)(A). Millennium submitted to New York on

November 20, 1998 a certification that the Millennium Project complied with New York's

coastal zone management program. On January 28, 1999, New York notified Millennium that its

consistency application did not contain the materials necessary for New York's review of the

consistency certification and that Millennium's failure to provide the necessary information

might lead New York to object thereto. (Secy.'s Opp'n 11.) During the period between

February, 1999 and March, 2001, Millennium provided additional information in support of its

consistency application. (Id.) New York also advised Millennium that the State's CZMA review

of the project began on March 12, 2001, upon receipt of the Supplemental Draft Environmental

Impact Statement (SDEIS).  (Id. at 12.)  On September 10, 2001, Millennium sent an e-mail to

New York setting out draft language for an extension of the six-month review deadline.  The e-

mail proposed that New York "will use its best efforts to determine consistency . . . promptly

(within 30 to 60 days) following issuance of the Final Environmental Impact Statement for the

project."  (Id.)  In a letter to New York dated September 12, 2001, Millennium confirmed that the

parties "pursuant to 15 C.F.R. 930.60(a)(3), mutually agreed to extend the time for [the State] to

render a decision . . . "  (Id.)  Millennium's letter also specified that New York would "determine

consistency . . . after issuance of the [FEIS] . . . ." and asked New York to respond indicating its

assent to the extension of time.  (Id. at 13.)  On October 5, 2001, New York received a copy of

the Final Environmental Impact Statement ("FEIS") and recommenced the review of

Millennium's project.  (Id.)

        On or about November 27, 2001, New York became aware, from information received

from the U.S. Army Corps of Engineers, that Millennium might conduct blasting in a portion of

the Hudson River.  (Id.)  On December 14, 2001, New York wrote to Millennium advising that

the State "ha[d] not completed its review" because of project changes involving underwater

blasting in the Hudson River, and accordingly had not, and would not, complete its CZMA

review in the 30 to 60 days following New York's receipt of the final FEIS it had previously

estimated.  (Secy.'s Opp'n 13.)  On March 14, 2002, Millennium wrote to New York providing

information concerning the blasting issues.  (Id. at 14.)  On April 23, 2002, Millennium provided

New York a site specific blasting plan and impact assessment for the pipeline's proposed Hudson

River crossing and requested that New York complete its review and conclude that the project is

consistent with New York's coastal management program.  (Id.)

4

On May 9, 2002, New York objected to the Millennium Project, finding that the Project was not consistent with New York's coastal management program.  New York asserted that alternative pipeline routes across the Hudson River and across the Catskill Aqueduct were reasonable and available.

Millennium filed a timely consistency appeal with the Secretary of Commerce ("Secretary") seeking an override of the State's objection pursuant to 16 U.S.C. § 1456(c)(3)(A) and 15 C.F.R. Part 930, Subpart H.  On June 7, 2002, Millennium filed a notice of appeal of New York's objection with the Secretary and requested the Secretary to override the objection on both procedural and substantive grounds.  On December 15, 2003, the Secretary upheld New York's objection to the project.  In sustaining New York's objection, the Secretary first determined that it was raised in a timely manner and that Millennium had failed to satisfy either of the statutory standards for overriding New York's objection to the Project.  On February 15, 2004, Millenium filed this complaint.  These motions followed.

## LEGAL STANDARD

As Millennium notes, this Court has jurisdiction under the Administrative Procedure Act ("APA"), and the parties agree that review of the Secretary's decision must be conducted on the administrative record and reviewed under the standards for judicial review.  5 U.S.C. § 706.  Under this standard, a court may set the action aside only if the Service's decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law.  See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 413-14 (1971); C&W Fish Co. v. Fox, 931 F.2d 1556, 1562-1565 (D.C. Cir. 1991).  In making this inquiry, the Court asks whether the agency considered the relevant factors and whether or not it made a clear error of judgment.  "At

a minimum, the agency must have considered relevant data and articulated an explanation

establishing a rational connection between the facts found and the choice made. The scope of

review under the arbitrary and capricious standard is narrow and a court is not to substitute its

judgment for that of the agency." Wyo. Outdoor Council v. Bosworth, 284 F. Supp. 2d 81, 89

(D.D.C. 2003).  Rather, the agency action under review is entitled to a presumption of regularity.

See Envtl. Def. Fund, Inc. v. Costle, 657 F.2d 275, 283 (D.C. Cir. 1981).  Under the arbitrary and

capricious standard, the burden of proof is on the party challenging the decision.  See Cleary,

Gottlieb, Steen & Hamilton v. Dep't of Health & Human Servs., 844 F. Supp. 770, 783 (D.D.C.

1993) (citing Schweiker v. McClure, 456 U.S. 188 (1982)).

  The Court must review the agency's action based on the administrative record before the

court.  See Camp v. Pitts, 411 U.S. 138, 142 (1973).  Because there are generally no facts in

dispute in administrative record cases, and the court need not and, indeed, may not, "find"

underlying facts, there are no material facts essential to the court's resolution of this action, and

the parties' motions for summary judgment are appropriate.  Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986).

## DISCUSSION

  Millennium argues that the Secretary exceeded his statutory authority in extending the

CZMA's six-month period for state action.  Millennium also alleges that the Secretary acted

arbitrarily and capriciously and abused his discretion by failing to accord preclusive effect to the

FERC findings.  In response, defendants argue that the Secretary correctly determined that New

York objected to the project on a timely basis.  Defendants also state that the Secretary had a

reasonable basis for his conclusion that reasonable alternative routes are available and that

Millennium did not establish otherwise.  And finally, defendants argue that the Secretary did not

act arbitrarily or capriciously in deciding the pipeline was not necessary in the interest of national

security.  The Court agrees with defendants and will address plaintiff's arguments in turn.

**I.        Timeliness of New York's Objection**

A.        *Coastal Zone Management Act*

The CZMA states that "[i]f the state or its designated agency fails to furnish the

required notification within six months after receipt of its copy of the applicant's certification,

the state's concurrence with the certification shall be conclusively presumed."  16 U.S.C. §

1456(c)(3)(A).  Plaintiff alleges that because New York received Millennium's certification on

November 20, 1998 and did not issue the required notification until May 9, 2002, New York's

concurrence with Millennium's certification must be presumed as a matter of law.  The Court

disagrees.

The review for consistency does not automatically begin with the mere submission of an

application for certification.  According to the CZMA, "commencement" of review occurs when

the applicant "furnish[es] to the state or its designated agency a copy of the certification, with all

necessary information and data."  16 U.S.C. § 1456(c)(3).  In this case, New York sent timely

notice to Millennium and the concerned federal agencies of Millennium's incomplete

certification and specified the necessary data and information Millennium was obligated to

provide in order for its consistency review to commence.  Therefore, the start of the six-month

time period to address consistency was tolled until all necessary information and data was

received by New York.  15 C.F.R. § 930.60(a)(1).

In a letter dated January 28, 1999, New York notified Millennium, the FERC, and the

New York and Buffalo Districts of the Army Corps of Engineers, that "if [the specified]
necessary data and information is not provided, the Department of State may object to your
consistency certification on the grounds of insufficient information" and that "without the
specified information the consistency of the proposal with the NYS Coastal Management
Program cannot be addressed." (Secy.'s Reply 5.) This letter from New York satisfies the
minimal requirements of 16 U.S.C. § 1456(c)(3)(A) that "at the earliest practicable time the state
or its designated agency shall notify the federal agency concerned that the state concurs with or
objects to the applicant's certification" based on the specific objections it had to Millennium's
November 20, 1998, certification application.

        Accordingly, as found by the Secretary, the mere submission by Millennium of a
consistency certification was insufficient to commence review, until it furnished all necessary
information and data.

B.      *Chevron*

        Plaintiff also contends that the Court's determination of the validity of the Secretary's
interpretation of the CZMA is governed by <u>Chevron</u>. <u>Chevron U.S.A., Inc. v. NRDC, Inc.</u>, 467
U.S. 837 (1984). Under <u>Chevron</u>, "[i]f the statute speaks clearly to the precise question at issue,
the courts "must give effect to the unambiguously expressed intent of Congress." 467 U.S. at
842-43 (internal quotations omitted). Here, the language of the statute does not address the
"precise" question of whether there are circumstances under which a state's consistency review
might properly extend beyond six months after an applicant first tenders a certification. Where a
statute is either silent or ambiguous with respect to the question at issue, <u>Chevron</u> dictates that
the Court must determine whether the agency's interpretation is "based on a permissible

8

construction of the statute." (Id.) The Secretary's interpretation of the CZMA is a permissible construction.

The precise question at issue is the content of the notice a state is required to provide in order to forestall a federal agency from conclusively presuming the state's concurrence. 16 U.S.C. § 1456(c)(3)(A). The statute requires only that the notice indicate whether "the state concurs with or objects to the applicant's certification." (Id.) The phrase does not limit a state objection to a decision on the consistency issue itself or prevent a construction that a state may validly object to a certification on other grounds, such as an applicant's failure to provide information required by 16 U.S.C. § 1456(c)(3)(A) and 15 C.F.R. § 930.58. Therefore, it is wholly permissible for the Secretary to have adopted 15 C.F.R. § 930.60 and to preclude the presumption of agency concurrence in situations where the federal agencies have notice that the application is incomplete.

Additionally, a state cannot review the merits of a project's consistency with a state coastal management program ("CMP") until the applicant has tendered the statutorily required necessary data and information. The statute clearly anticipates that the certification will be submitted as a package, including all necessary data and information. 16 U.S.C. § 1456(c)(3)(A). When applicants submit their certifications without all the information necessary for a state to provide meaningful review, it is reasonable for the Secretary to hold that their application is incomplete.

Conversely, Millennium suggests that both the statute and the legislative history indicate that the time period for state review begins when the certification is filed, and does not require the submission of necessary data and information. The Court disagrees. The statute requires that

"the applicant shall furnish to the state or its designated agency a copy of the certification, with all necessary information and data."  16 U.S.C. § 1456 (c)(3)(A).  It is absolutely essential that a state have the "necessary information and data" at the same time of filing of a certification, especially when it will have a lasting impact on the state's coastline.  This construction of the statute gives states a meaningful opportunity to review development projects affecting their coastal zones.  For states to be required to rely on a certification without all of the necessary information and data runs contrary to the intent of the statute.

C.    *Six-Month Extension*

Millennium argues that even if the Secretary's interpretation of the statute were upheld by the Court, the Secretary erred by concluding that the agreement extended the state's consistency review period for an indefinite period.  Millennium also contends that they lacked the authority to waive strict compliance with the six-month period for state consistency review and, accordingly, that both its agreement and the National Oceanic and Atmospheric Administration of the Department of Commerce ("NOAA") regulation which permitted such agreements are unlawful and void.  The Court disagrees with all of Millennium's arguments.

The agreement between Millennium and NYSDOS was not indefinite.  The agreement as interpreted by the Secretary did not contain a specific date certain by which the review period must end.  However, the Secretary did construe the agreement to require NYSDOS to complete its review after issuance of the FEIS and Millennium's submission of information the State deemed necessary for its review.  (Secy.'s Decision 19 n. 58.)  More critically, the Secretary found that, though not fixed in length, the agreement to continue the consistency review period was terminable at will by either party.

10

Millennium also argues that the extension agreement was void because the six-month statutory time limit precludes any modification by agreement of the parties.  Defendants argue that the six-month consistency review deadline was validly waived by agreement of the applicant and reviewing state.  The Court agrees with defendants and the Secretary's rule permitting tolling agreements based on the principle that statutory deadlines such as found in the CZMA are subject to waiver, estoppel and equitable tolling.  See e.g. Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982) (Title VII timeliness deadlines are not jurisdictional).

The Secretary's rule at issue in this case permits mutual agreements between a state and applicant to stay the consistency time period.  The regulation merely sanctions an applicant's own exercise of its prerogative to waive the statutory deadline.  The administrative record supports a finding that Millennium agreed to stay the consistency time period based on their own self-interest and failure to provide the required information.  This agreement waived Millennium's right to a timely decision.  Accordingly, the Secretary did not abuse his discretion by finding that the agreement between Millennium and New York was lawful.

## II.    The Secretary's Decision

A.    *State Review under CZMA: Catskill Aqueduct*

Under Section 307(c)(3)(A) of the CZMA, a state may only review a project requiring a federal license or permit to the extent that the project "affect[s] any land or water use or natural resource of the coastal zone of that state . . . ."  16 U.S.C. § 1456(c)(3)(A).  The Secretary's regulations governing state review of federal license or permit activities define "effect on any coastal use or resource" or "coastal effect" as:

> [A]ny reasonably foreseeable effect on any coastal use or resource

> resulting from a federal action. . . . Effects are not just environmental
> effects, but include effects on coastal uses. Effects include both direct
> effects which result from the activity and occur at the same time and
> place as the activity, and indirect (cumulative and secondary) effects
> which result from the activity and are later in time or farther removed
> in distance, but are still reasonably foreseeable.

15 C.F.R. § 930.11(g).

Millennium contends that the pipeline segment proposed by Millennium across the Catskill Aqueduct would not "affect[] any land or water use or natural resource of the coastal zone of the state" and thus is not subject to New York's review under the CZMA. (Pl.'s Mot. 26.)  However, the Secretary concluded otherwise.  The Secretary reasoned that a rupture of the pipeline could conceivably cause a release of water from the aqueduct, that such a loss of water supply "would directly affect New York City, a part of which is located within the coastal zone," and that, as a consequence, "a failure of the [aqueduct] would have direct impacts on the resources and uses of the coastal zone."  (Pl.'s Mot. 26.)  This Court agrees.

The evidence in the record does not support Millennium's argument.  The FEIS discusses the Catskill Aqueduct crossing as an environmental consequence of the project.  The FEIS also notes that the New York City Department of Environmental Protection has expressed continuing concern about the pipeline crossing in this area since any failure of the pipeline would result in the interruption of water supplies to New York City.  Accordingly, the Court affirms the Secretary's decision that the Catskill Aqueduct crossing was subject to CZMA review because it had a "reasonably foreseeable effect on any coastal use or resource."  (Secy.'s Mot. 39.)

B.    *Route Alternatives*

The Secretary also concluded that the Millennium Project was not consistent with the

objectives of the CZMA because Millennium failed to demonstrate that "[t]here is no reasonable alternative available which would permit the activity to be conducted in a manner consistent with the enforceable policies of the state coastal management program." (Pl.'s Mot. 28.) Millennium argues that "even if the Secretary may lawfully require an appellant to show that there are no reasonable and available alternatives to override a state's objection to a project, the Secretary's imposition of an onerous burden of proof on Millennium was arbitrary and capricious." (Pl.'s Mot 29.) Millennium further contends that there were no reasonable and available alternative pipeline routes across the Hudson River and the Catskill Aqueduct, and that there was not substantial evidence to support the Secretary's decision. (Id.) The Court is not persuaded by Millennium's arguments.

The Secretary did not hold Millennium to an "impossible" burden of proof. Under 15 C.F.R. § 930.130(d), "[t]he appellant bears the burden of submitting evidence in support of its appeal and the burden of persuasion." In fact, the Secretary states that it is well established in prior consistency appeal decisions that the appellant bears the burden of proof in demonstrating that an alternative is unavailable or unreasonable. (Secy.'s Decision at 23.) The Secretary's Decision also explains that Millennium's arguments about "time consuming, expensive, and uncertain" did not satisfy its burden of proof because they were conclusory and not specific to the particular site in question. (Secy.'s Decision 29-30.)

The Secretary also found that an alternative route could be constructed because, while New York had introduced sufficient evidence to demonstrate the availability of those routes, Millennium's claims lacked credible evidence and convincing arguments. The Secretary acknowledged the conflicting evidence in the record but nonetheless accepted New York's

decision that the route could be constructed.  The Secretary pointed out that 1) Millennium failed to provide actual information on specific conditions at a key site along the route; 2) Millennium failed to substantiate any concerns regarding the feasibility of constructing one of the route's segments; and 3) Millennium had no response to the argument that pipelines can be constructed in close proximity to existing utilities.  (Secy.'s Decision 30-32.)

The Secretary's decision contains a reasoned and well-supported finding that this route alternative is reasonable and available.  Furthermore, the Secretary's decision that alternative routes are available is supported by substantial evidence and based on a permissible interpretation of the CZMA.

## III.    National Security

Under Section 307(c)(3)(A), the CZMA provides that the Secretary must override a state's objection to a proposed project that requires a federal license or permit if the project is "necessary in the interest of national security."  16 U.S.C. § 1456(c)(3)(A).  Here plaintiff argues that both the Department of Energy ("DOE") and the FERC advised the Secretary that the Millennium Project satisfied that statutory standard and that the Secretary should thus override New York's objection.  (Pl.'s Mot. 32-33.)

In spite of these recommendations, the Secretary decided that the record did not support a finding that the Project was "necessary in the interest of national security."  (Id.)  The Secretary, relying on the NOAA's regulations, found that a project is not "necessary in the interest of national security" unless a "national security interest would be significantly impaired were the activity not permitted to go forward as proposed."  15 C.F.R. § 930.122.

Plaintiff claims that the Secretary had no authority to alter the statutory standard --

"necessary in the interest of national security" -- by requiring "a specific and significant impairment" of national security interests "if the pipeline were not permitted to go forward as proposed." (Pl.'s Mot. 34.) The Court finds that the "specific and significant impairment" requirement imposed in the Decision of the Secretary was a permissible reading of the "national security" standard in the statute, and that the Secretary did not abuse his discretion in finding that the standard was not satisfied.

Congress authorized the Secretary to override a state's consistency objection when "necessary in the interest of national security," but failed to define what it meant in terms of the national security interest. The NOAA permissibly resolved this ambiguity by promulgating a regulation further defining a national security interest as "a national defense or other national security interest that would be significantly impaired were the activity not permitted to go forward as proposed." 15 C.F.R. §930.122. Thus, the NOAA's regulation is a permissible reading of the statute that addresses the standard's ambiguities.

Millennium also argues that even if the NOAA regulations are valid, the Secretary's failure to heed the advice of the DOE and the FERC was arbitrary and capricious. (Pl.'s Mot. 34.) Plaintiff's argument is not persuasive. Here, the Secretary considered the recommendations of the federal agencies and reasonably decided that, under NOAA regulations, "general statements that the project furthers or is important to the national interest fail to satisfy the requirements [of a] specific and significant impairment." (Secy.'s Opp'n 44.) Moreover, the regulations name the Department of Defense ("DOD") as the one agency having a special interest in the national security issue. In this case, the DOD reiterated the views of the Army Corps of Engineers, objecting to the project due to its adverse impacts and the availability of alternative

routes.  (Id.)

The regulations leave it to the Secretary's discretion to disagree with other government agencies if he determines that their national security concerns are not important enough to override the valid local concerns of the affected state.  15 C.F.R. § 930.122.  Accordingly, the Secretary's decision was not arbitrary, capricious or an abuse of discretion.

## CONCLUSION

For the reasons stated herein, the Court will deny plaintiff's motion for summary judgment and grant all defendants' cross-motions for summary judgment.

A separate Order will issue this date.


Signed by Royce C. Lamberth, United States District Judge, March 31, 2006.

16